**People of State of Illinois ex rel. Greater Rockford Airport et al., Plaintiffs-Appellees, v. Frank Ditto, Defendant-Appellant.**

**Gen. No. 10,666.**

Opinion filed March 26, 1953. Released for publication April 13, 1953.

LaVerne Anderson, and William H. Barrick, both of Rockford, for appellant; William H. Barrick, of Rockford, of counsel.

Robert R. Canfield, State's Attorney, and Welsh and Welsh, all of Rockford, for appellees; Rosario A. Gaziano, Assistant State's Attorney, and C. K. Welsh, both of Rockford, of counsel.

Mr. Justice Wolfe delivered the opinion of the court.

This is a quo warranto proceeding brought by the State's Attorney of Winnebago county, Illinois, on the relation of the Greater Rockford Airport Authority to oust the defendant-appellant, Frank Ditto, from his position as a commissioner on the Authority, by virtue of his appointment by Mayor C. Henry Bloom, Mayor of Rockford, Illinois, for a term of five years from May 7, 1952. The case involves an interpretation of section three of the Airport Authority Act (sec. 68.3, ch. 15½, Illinois Revised Statutes 1951 [Jones Ill. Stats. Ann. 21.1752(27)]).

The complaint for quo warranto was filed September 22, 1952, and alleged that on the 7th day of May 1952,

49

C. Henry Bloom, Mayor and presiding officer of the City of Rockford, Illinois, appointed Frank Ditto a member of the Board of Commissioners of Greater Rockford Airport Authority to succeed Glen L. Alberstett, whose term as a member of the Board of Commissioners of said Airport Authority expired on May 6, 1952, and that the said Frank Ditto had continuously since May 7, 1952, unlawfully held, executed, assumed and pretended to use, exercise, enjoy and perform the office of a member of the Board of Commissioners of the Greater Rockford Airport Authority. It was further alleged that the Greater Rockford Airport Authority was created and established by and under the authority of an act of the legislature of the State of Illinois entitled, "An Act in Relation to Airport Authorities," approved April 4, 1945, and the amendments thereto, particularly the amendments to paragraph three of said Act approved July 9, 1951 (Ill. Rev. Statutes 1951, ch. 15½, secs. 68.1–68.20 [Jones Ill. Stats. Ann. 21.1752(25)–21.1752(44)]).

It was further alleged that since May 7, 1952, the defendant had usurped and intruded into and still does usurp and intrude into the said office and upon the People of the State of Illinois and against the peace and dignity of the same contrary to the statutes in such cases made and provided pursuant to said purported appointment. The complaint closed with a prayer that the said Frank Ditto be required to answer showing by what right or warrant he claims the right of appointment and that upon a hearing, if he does not justify his rights to the same, that he be ousted and expelled by the Board of Commissioners of the Greater Rockford Airport Authority.

The defendant was served with summons September 23, 1952, and filed his answer to the complaint on September 29, 1952. He denied that he had usurped the position of a commissioner and alleged that he was

appointed on the 7th day of May, 1952, by C. Henry Bloom, Mayor and presiding officer of the City of Rockford, a municipal corporation, as a member of the Board of Commissioners of the Greater Rockford Airport Authority to succeed Glen L. Alberstett who had also been an appointee of the said Mayor Bloom, but whose term as a member of the Board of Commissioners had expired. He alleged that he gave bond, took the oath of office and has continually since said appointment held, executed, enjoyed, and performed the office of a member of the Board of Commissioners of the Greater Rockford Airport Authority, pursuant to the act of the legislature of the State of Illinois referred to in the complaint.

He further alleged that upon the organization of the Airport Authority there was only one municipality within the Authority with a population in excess of 5,000 inhabitants, and that said municipality was the City of Rockford which had a population in excess of 90,000 and covered an area of 14 square miles. He alleged that under section 3, paragraph 1-a of the 1945 Act, it was provided that where at the time an Airport Authority is organized there is only one such municipality in the area, that three commissioners were to be appointed from such municipality; one commissioner was to be appointed from the area within the Authority outside of the municipality, and one commissioner should be appointed at large, and that he was one of said three commissioners duly appointed by the City of Rockford.

He further alleged that after the formation of said Airport Authority, the community of Loves Park, Illinois was granted a charter as a City, and that its population was in excess of 5,000 inhabitants and that pursuant to an amendment to section 3 of said Act, which was approved on July 9, 1951, the City of Rockford continued to be represented by three commis-

sioners on the Board of said Airport Authority and the City of Loves Park became entitled to one commissioner on said Authority. He alleged that the amendment of 1951 provided that should a municipality wholly within an Authority obtain or should a municipality be established having a population of 5,000 or more after the entry of the order creating an Authority, that the presiding officer of such a municipality could petition the county judge for an order finding and determining the population of such a municipality was found to have a population of 5,000 or more the Board of Commissioners of the Airport Authority as previously established should be increased by one commissioner who should reside within the corporate limits of such municipality and who should be appointed to the Airport Authority by the presiding officer of that municipality. He likewise alleged that under the amendment an additional municipality having a population of 5,000 or more having been formed within the Airport Authority district, that the Board of Commissioners of the Airport Authority as previously established was increased by one commissioner to six commissioners and that it had operated with six commissioners since the amendment and that three commissioners thereof had continued to be appointed by the Mayor of Rockford.

He admitted that he had exercised, used and enjoyed the office to which he had been appointed and alleged that he had performed all of his duties, functions and powers, and denied that he had usurped or intruded into said office against the peace and dignity of the People of the State of Illinois contrary to the statutes but alleged that he had been properly appointed, duly qualified and was entitled to the office and denied the right of the People of the State of Illinois to question his appointment and prayed that the complaint be dismissed at the plaintiffs' costs.

The case was set for trial and the attorneys for plaintiffs and the defendant stipulated with reference to the facts and the issues necessary for a decision in the matter. At the close of the stipulation and the arguments of counsel, the court announced his decision and held that the defendant, Frank Ditto, was not a proper commissioner for said Authority and entered an order ousting and prohibiting him from acting as such commissioner, and it is from this order that the defendant, Frank Ditto, has perfected an appeal to this court.

The section of the statute that is involved in this proceeding is part of section 68.3, ch. 15½ of Smith Hurd Revised Statute and is as follows: "Every authority so established shall be governed by a board of commissioners. In the order finding the results of the election to be favorable to the establishment of the Authority, the said County Judge shall determine and name each municipality within the authority having five thousand or more population according to the last census.

"(1) In case there are one or more municipalities having a population of 5,000 or more within the authority, the commissioners shall be appointed as follows:

"(a) Where there is only one such municipality, three commissioners shall be appointed from such municipality, and one commissioner shall be appointed from the area within the Authority outside of such municipality, and one commissioner shall be appointed at large. If the Authority is located wholly within the corporate limits of such municipality, three of the commissioners of the Authority shall be appointed from such municipality, and two commissioners shall be appointed at large.

"(b) Where there are two or more such municipalities, one commissioner shall be appointed from each such municipality, one commissioner shall be appointed

from the area within the authority located outside of such municipalities, and two commissioners shall be appointed at large. If the Authority is located wholly within the corporate limits of such municipalities, two commissioners shall be appointed from the one of such municipalities having the largest population, and one commissioner shall be appointed from each of the other such municipalities and two commissioners shall be appointed at large.

"(c) Commissioners representing the area within an Authority located outside of any municipality having five thousand or more population and commissioners appointed at large shall be appointed by the said County Judge and any commissioner representing the area within any such municipality shall be appointed by its presiding officer."

The statute was in this form when the original Greater Rockford Airport Authority was organized. It is conceded that at the time of the original organization of the Authority, Rockford was the only city within its limits with a population of 5,000 or more, but in the meantime the City of Loves Park, situated in the limits of its Authority had reached a population of 5,000 and more. To remedy such a situation, paragraph 5 was added to section 68.3 of the statute. This amendment was made in 1951 and is as follows: "5. Should a municipality which is wholly within an authority attain, or should such a municipality be established, having a population of 5,000 or more after the entry of said order by the county judge, the presiding officer of such municipality may petition the county judge for an order finding and determining the population of such municipality and, if it is found and determined upon the hearing of said petition that the population of such municipality is 5,000 or more, the board of commissioners of such authority as previously established shall be increased by one commis-

sioner who shall reside within the corporate limits of such municipality and shall be appointed by its presiding officer. The initial commissioner so appointed shall serve for a term of 1, 2, 3, 4, or 5 years, as may be determined by lot, and his successors shall be similarly appointed and shall serve for terms of 5 years. All provisions of this section applicable to commissioners representing municipal areas shall apply to any such commissioner, including paragraph 3. As amended 1951, July 9, Laws 1951, p. 995." An examination of the sec. 68.3 as it existed prior to 1951 and the Act of 1951 are exactly the same with the exception of the addition of paragraph 5.

■■ It is the contention of the appellant that by adding paragraph 5 the legislature intended to add one more commissioner to the Authority and that the City of Rockford still had authority to appoint three commissioners. It is the contention of the appellees that as soon as Loves Park was taken into the Authority, and a commissioner appointed, that then the City of Rockford had only the power to appoint one commissioner, the City of Loves Park one, and one outside of the municipality and two commissioners appointed at large. In interpreting the language of this amendment, we must try to gather the intent of the legislature when it passed the law. What need was there for the addition of this paragraph? It is stated in the amendment, "The board of commissioners of such authority as previously established shall be increased by one commissioner who shall reside within the corporate limits of such municipality, etc." At the time Loves Park was admitted as an incorporated city into the Authority, there were five legally qualified appointed commissioners. This statute then increased the number to six. It is stated in appellees' brief: "The legislature, by the terms of the amendment, recognized the fact that for a temporary length of time there

55

would be the necessity of an additional member to the board, which it provided for in the amendment. We believe that the legislature intended that the City of Rockford would automatically lose the power to appoint more than one commissioner." It is plain from the amendment that the legislature intended that as soon as Loves Park was admitted to the Authority, that the board of commissioners should be increased to six, but we are unable to find any place in the statute where it provided that at any time the board should be reduced to five.

It is our opinion that the trial court erred in finding that Frank Ditto, the defendant, was not a legal and qualified commissioner of the Authority, but should have found that Frank Ditto was a legal member of the board. The judgment of the ouster was erroneous and is reversed.

*Reversed and remanded.*